**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

ÁLIDA IROMI LARA-NIEVES

    **Plaintiff,**

       v.

COMMONWEALTH OF PUERTO RICO ET AL.

    **Defendants.**

**Civil No. 24-1358 (RAM)**

<u>**OPINION AND ORDER**</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge.

    Before the Court is the Commonwealth of Puerto Rico (the "Commonwealth"), the Secretary of Public Safety of Puerto Rico Alexis Torres-Ríos ("Torres-Ríos"), and the Commissioner of the Puerto Rico Police Bureau Antonio López-Figueroa ("López-Figueroa") (collectively, the "Commonwealth and Supervisory Defendants" or "Defendants")'s *Motion for Partial Dismissal of First Amended Complaint* ("*Motion*"). (Docket No. 56). For the reasons set forth below, the Court hereby **GRANTS IN PART** Defendants' *Motion*.

    **I.    FACTUAL AND PROCEDURAL BACKGROUND**

    On August 12, 2024, Plaintiff Álida Iromi Lara-Nieves ("Plaintiff" or "Lara-Nieves") filed a *Complaint* against the Commonwealth, Secretary of Public Safety Torres-Ríos, Commissioner López-Figueroa, and Inspector Luis Díaz-Muñoz ("Díaz-Muñoz") for

alleged employment discrimination and sexual harassment. (Docket No. 1).

On August 13, 2025, Plaintiff filed an *Amended Complaint*. (Docket No. 54). Therein, she states that on September 26, 2023, she was sexually harassed and assaulted by Díaz-Muñoz, the Assistant Director of the Licensing Investigations and Firearm Inspections Bureau of the Puerto Rico Police Bureau ("PRPB"). Id. at 1, 9. Plaintiff alleges that Díaz-Muñoz possessed supervisory authority over her, as she was then an attorney at the Legal Affairs office of the PRPB. Id. Plaintiff claims that PRPB leadership did not adequately protect her from Díaz-Muñoz and likewise failed to timely investigate or discipline Díaz-Muñoz as required by PRPB policy. Id. at 12-13. She avers that she was terminated on June 30, 2024, in retaliation for filing complaints about Díaz-Muñoz's assault. Id. at 2.

Against this alleged factual backdrop, Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"); Section 1983; Puerto Rico Laws 69, 17, and 115; Puerto Rico tort statutes; and provisions of the Constitution of the Commonwealth of Puerto Rico, including on a supervisory liability theory against Secretary of Public Safety Torres-Ríos and Commissioner López-Figueroa. Id. at 23-27, 38-39. Plaintiff seeks damages, reinstatement, and injunctive relief requiring Defendants to better enforce anti-sexual harassment policies. Id. at 38-39.

On August 27, 2025, the Commonwealth and Supervisory Defendants filed a *Motion for Partial Dismissal* ("*Motion*") of Plaintiff's *Amended Complaint*; Díaz-Muñoz similarly filed a *Motion to Dismiss*. (Docket Nos. 56, 57). The Commonwealth and Supervisory Defendants argue for the dismissal of three categories of Plaintiff's claims. (Docket No. 56). First, they argue that the causes of action rooted in Puerto Rico constitutional protections, the Civil Code's general tort statute, and promissory estoppel ought to be dismissed because the underlying conduct of alleged employment discrimination and harassment is concurrently covered by local antidiscrimination statutes. Id. at 8-9. Defendants aver that the cited Civil Code and constitutional provisions, therefore, are supplanted and do not provide for an independent cause of action. Id. Second, Defendants contend that Plaintiff's demands for the enforcement of the PRPB Reform Agreement must be dismissed because the Reform Agreement is a consent decree in a separate case subject to ongoing judicial supervision. Id. at 9-12. Defendants argue that enforcement must be sought in that case, not through collateral litigation. Id. Third, Defendants maintain that Plaintiff's supervisory liability theory against Secretary of Public Safety Torres-Ríos and Commissioner López-Figueroa fails, given that the *Amended Complaint* does not demonstrate their direct personal involvement, deliberate indifference, or an affirmative causal link between their conduct and the harm. Id. at 12-17. The

*Motion* is not a model of clarity in describing the counts it seeks to dismiss or the Section 1983 causes of action it brings, but it appears to contest Count 3 (a Section 1983 cause of action) as to Secretary of Public Safety Torres-Ríos and Commissioner López-Figueroa and Counts 7-10 (the general tort and constitutional claims) only as to the Commonwealth. *See* (Docket Nos. 54, 62 at 12-13).

On September 30, 2025, Plaintiff filed her *Response* to the Commonwealth and Supervisory Defendants' *Motion*. (Docket No. 62). She argues first that the *Amended Complaint* "is not asking the Court to enforce the Puerto Rico Police Reform agreement" as a consent decree, but rather seeks enforcement of PRPB's own anti-harassment policies, which "happen[] to be required by the Puerto Rico Police Reform Agreement." Id. at 6-7. Second, Plaintiff contends that she adequately pleads her supervisory liability theory against Secretary of Public Safety Torres-Ríos and Commissioner López-Figueroa because the alleged facts indicate deliberate indifference and an "affirmative link" to Díaz-Muñoz's constitutional violations, including alleged prior notice of Díaz-Muñoz's history of misconduct against women and failures to timely investigate or impose corrective measures. Id. at 7-12. Third, Plaintiff argues that the Court should not dismiss the claims uncontested by Defendants at this Rule 12(b)(6) stage, on the basis that their *sua sponte* dismissal is strongly disfavored under First

Circuit precedent. _Id._ at 12-13. Fourth, Plaintiff avers that dismissal of the Puerto Rico constitutional and Civil Code general tort claims would be premature. _Id._ at 12-13. She urges the Court to defer any decision on the aforementioned counts until a later stage, such as summary judgment. _Id._

## II.  LEGAL STANDARD

When ruling on a Fed. R. Civ. P. 12(b)(6) motion to dismiss, "[t]he sole inquiry ... is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." _Ocasio-Hernandez v. Fortuno-Burset_, 640 F.3d 1, 7 (1st Cir. 2011). The Court must first "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." _Schatz v. Republican State Leadership Committee_, 669 F.3d 50, 55 (1st Cir. 2012) (internal citations omitted). Then, the Court takes "the complaint's well-pled (_i.e._, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor," to determine "if they plausibly narrate a claim for relief." _Id._ (internal citations omitted). One of the grounds allowing a complaint to be dismissed under Fed. R. Civ. P. 12(b)(6) is for "failure to state a claim upon which relief can be granted." When evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), Courts may consider: "(a) 'implications from documents'

attached to or fairly 'incorporated into the complaint,' (b) 'facts' susceptible to 'judicial notice,' and (c) 'concessions' in plaintiff's 'response to the motion to dismiss.'" <u>Schatz</u>, 669 F.3d at 55-56 (quoting <u>Arturet-Vélez v. R.J. Reynolds Tobacco Co.</u>, 429 F.3d 10, 13 n.2 (1st Cir. 2005)).

### III. DISCUSSION

Defendants ask the Court to dismiss three categories of Plaintiff's causes of action. *See* (Docket No. 56). The Court addresses each in turn.

### A. Counts 7-10

Counts 7, 8, 9, and 10 of Plaintiff's *Amended Complaint* bring claims premised on the Puerto Rico Civil Code's general tort statute and Puerto Rico constitutional protections. (Docket No. 54 at 31-38); P.R. Laws Ann. tit. 31, § 10801; *see, e.g.*, <u>Rivera-Lopez v. Clinical Med. Servs., Inc.</u>, 2025 WL 3653805, at *4 (D.P.R. 2025). Defendants argue that these causes of action ought to be dismissed because the underlying conduct of employment discrimination and harassment is concurrently covered by local antidiscrimination statutes. (Docket No. 56 at 8-9). Plaintiff answers that dismissal of these claims would be premature at the motion-to-dismiss juncture. (Docket No. 62 at 12-13).

Plaintiff also points out that "the Movants did not ask for dismissal of...the claims against the Supervisory Defendants and Díaz-Muñoz in Counts 9 and 10." (Docket No. 62 at 12). Defendants

fail to rebut this framing. Moreover, Defendants' *Motion* labels its request for dismissal as to these counts as "Claims against the Commonwealth," and in conclusion avers that "[t]he Complaint fails to properly state claims **against the Commonwealth** (Counts 7, 8 & 9)...and under the Constitution of the Commonwealth of Puerto Rico." (Docket No. 56 at 4, 17) (emphasis added). For these reasons, the Court considers the *Motion to Dismiss* only as to the Commonwealth in relation to Counts 7-10. The Court does not address today whether Counts 9 and 10 should be dismissed as to Secretary of Public Safety Torres-Ríos and Commissioner López-Figueroa.

   **a. Applicable law**

      i.   Articles 1536, 1538, and 1540 of the Civil Code

   Article 1536[1] is Puerto Rico's general tort statute, and states that a person who "through fault or negligence, causes damage to another, is obliged to repair it." P.R. Laws Ann. tit. 31, § 10801; *see, e.g.*, Rivera-Lopez, 2025 WL 3653805 at *4. To succeed on an Article 1536 tort claim, the plaintiff must demonstrate "(1) evidence of physical or emotional injury, (2) a negligent or intentional act or omission (the breach of duty element), and (3) a sufficient causal nexus between the injury and defendant's act or omission (in other words, proximate cause)."

---

[1] The Puerto Rico Civil Code was amended in 2020; Articles 1536 and 1540 were previously titled Articles 1802 and 1803, respectively. *See* González-Ortíz v. Puerto Rico Aqueduct & Sewer Auth., 2024 WL 3759659, at *10 (D.P.R. 2024).

Gonzalez-Caban v. JR Seafood Inc., 48 F.4th 10, 14 (1st Cir. 2022)

(quoting Vázquez-Filippetti v. Banco Popular de P.R., 504 F.3d 43,

49 (1st Cir. 2007)).

Article 1538 allows for the imposition of punitive damages

"whenever the act or omission constitutes a crime, is committed

intentionally or with serious disregard for the life, safety, and

property of others." P.R. Laws Ann. tit. 31, § 10801; *see, e.g.*,

Rodriguez Perez v. Abreu Garcia, 2024 WL 808654, at *6 (D.P.R.

2024).

Article 1540 applies the principle of *respondeat superior* to

Article 1536 claims. P.R. Laws. Ann. tit. 31, § 10805. To impose

employer liability under *respondent superior* in Puerto Rico, a

court must find: (1) the desire to serve, benefit, or further the

employer's business or interest; (2) that the act in question be

reasonably related to the scope of the employment; and (3) that

the agent not be prompted by purely personal motives. Borrego v.

United States, 790 F.2d 5, 7 (1st Cir. 1986) (quoting Rodriguez v.

United States, 328 F.Supp. 1389, 1391 (D.P.R. 1971)).

This District has repeatedly held that "provisions of the

Puerto Rico Civil Code are supplementary to special legislation

like Title VII, and that a special law prevails over a general

law." Orellano-Laureano v. Instituto Medico del Norte, Inc., 2023

WL 4532418, at *6 (D.P.R. 2023) (internal citation omitted);

Torres-Figueroa v. Televicentro of Puerto Rico, LLC, 2024 WL

4769756, at *2 (D.P.R. 2024) (explaining that "laws such as Title VII,...Law 115, and Law 80 are special laws" and so supplant Article 1536). Tort claims under Articles 1536 and 1538 are to be dismissed when they are entirely duplicative. *See* Santana-Colon v. Houghton Mifflin Harcout Pub. Co., 81 F. Supp. 3d 129, 140 (D.P.R. 2014). The Puerto Rico Supreme Court and courts in this District have held that, "to the extent that a specific labor or employment law covers the conduct for which a plaintiff seeks damages, [they are] barred from using the same conduct to also bring a claim under Article [1536]."[2] Id.

### ii.  Puerto Rico constitutional protections

Puerto Rico's Constitution provides that "[t]he dignity of the human being is inviolable," P.R. Const. art. II, § 1; protects all against "abusive attacks on [their] honor, reputation and private or family life," Id. § 8; and protects workers against "risks to [their] health or person in [their] work or employment," Id. § 16.

However, this District has repeatedly held that constitutional claims based on these provisions are not available in the employment discrimination context when they are duplicative of specific labor and antidiscrimination statutes. *See, e.g.*, Galarza-Cruz v. Grupo HIMA San Pablo, Inc., 2018 WL 324863, at *1

---

[2] The Santana-Colon case referred to the former Article 1802. *See supra* note 1; 81 F. Supp. 3d at 140.

n.2 (D.P.R. 2018); <u>Televicentro of Puerto Rico</u>, 2024 WL 4769756 at
*2. When Puerto Rico constitutional claims "are essentially
predicated on allegations covered by specific labor or employment
statutes, plaintiff[s are] barred from using the same conduct to
also bring a claim under other provisions" and constitutional
claims attempting to do so must be dismissed with prejudice.
<u>Galarza-Cruz</u>, 2018 WL 324863 at *1 n.2; <u>Televicentro of Puerto
Rico</u>, 2024 WL 4769756 at *2. This District has in the past
dismissed claims based specifically on Sections 1, 8, and 16 of
the Commonwealth's Constitution because the workplace
discrimination-related conduct alleged was covered by "specific
labor or employment statutes." <u>Galarza-Cruz</u>, 2018 WL 324863 at *1
n.2.

  iii. <u>Inartful pleading</u>

  A complaint need not be an archetype of legal craftsmanship,
but it must nevertheless provide "enough facts to state a claim to
relief that is plausible on its face" and give fair notice as to
what the claim is and the grounds upon which it rests. <u>Bell Atl.
Corp. v. Twombly</u>, 550 U.S. 544, 555, 570 (2007) (internal citation
omitted).

  When a plaintiff pleads tort causes of action in an inartful
manner--such as by collapsing multiple legal theories into a
single, confusing cause of action--courts are not required "to
swallow the plaintiff's invective hook, line, and sinker; bald

assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited." <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996). Likewise, courts are not obligated to "conjure up unpled allegations or contrive elaborately arcane scripts in order to carry the blushing bride [of the Complaint] through the portal [of the Rule 12(b)(6) stage]." <u>Gooley v. Mobil Oil Corp.</u>, 851 F.2d 513, 514 (1st Cir. 1988). "Judges are not mind-readers, so parties must spell out their issues clearly, highlighting the relevant facts and analyzing on-point authority." <u>Rodriguez v. Munic. of San Juan</u>, 659 F.3d 168, 175 (1st Cir. 2011).

### b. **Plaintiff's tort-based and constitutional claims must be dismissed**

#### i.  <u>Count 8 is a tort-based claim</u>

As a threshold matter, the Court notes that while Count 8 of Plaintiff's *Amended Complaint* begins under the label of "Breach of Implied Contract and Promissory Estoppel" and initially discusses doctrines rooted in the "common law," it then veers into negligence-based arguments and culminates in a request for "an award of punitive damages" under Article 1538, Puerto Rico's general tort-based damages statute. (Docket No. 54 at 33-34); *see* P.R. Laws Ann. tit. 31, § 10801.

The briefing does not clarify the nature of the claim. Both the *Motion* and Plaintiff's *Response* treat Count 8 as part and

parcel of the Article 1536 tort-based causes of action, and neither meaningfully address the elements of promissory estoppel or an implied-contract theory. *See* (Docket Nos. 56 at 8-9, 62 at 13-14). Thus, the Court construes Count 8 as an inartfully pled tort claim, since it ultimately seeks tort-based relief under Article 1538. (Docket No. 54 at 33-34). The Court will not attempt to divine-- much less supply--some alternative theory Plaintiff could have intended to advance. *See* Rodriguez, 659 F.3d at 175 ("Judges are not mind-readers").

> ii. <u>Counts 7-10 are duplicative of counts brought under special legislation</u>

Plaintiff's wrongful termination tort cause of action in Count 7, promissory estoppel cause of action in Count 8, infliction of emotional distress cause of action in Count 9, and constitutional causes of action in Count 10 are all barred as to the Commonwealth. This is so because specific employment statutes cover the conduct upon which these claims rest.

As Plaintiff's own *Amended Complaint* confirms, Counts 7-10 seek additional avenues of relief for the same nucleus of facts concerning workplace harassment and her firing that Plaintiff discusses under the special antidiscrimination statutes invoked in her *Amended Complaint*, including Title VII and Puerto Rico Laws 69, 17, and 115. (Docket No. 54). Plaintiff's recital of the actions perpetrated against her under each of Counts 7-10 does not

differ   from   the   conduct   with   which   she   pleads   the
antidiscrimination counts based on Title VII and Puerto Rico Laws
69, 17, and 115. Id. at 15-38. Put differently, the "terminat[ion
of]...employment as described above on the basis of her sex and
for complaining of sexual harassment" and "attack[]...[on her]
honor and reputation...by sexually harassing her or allowing
others to sexually harass her, and dismissing her for complaining
about said sexual harassment" that Plaintiff used to plead Counts
7-10 is the very conduct that animates her earlier statutory
claims. Id. at 32-38.

     That overlap is dispositive; it requires the dismissal of
each of Counts 7-10 as to the Commonwealth. This District has
repeatedly held that "provisions of the Puerto Rico Civil Code are
supplementary to special legislation like Title VII, and that a
special law prevails over a general law." Orellano-Laureano, 2023
WL 4532418 at *6 (internal citation omitted); Televicentro of
Puerto Rico, 2024 WL 4769756 at *2. Similarly, courts in this
District have often ruled that constitutional claims under Article
II's Sections 1, 8, and 16 are not available where they simply
restate workplace discrimination and retaliation already governed
by specific labor statutes. See Galarza-Cruz, 2018 WL 324863 at *1
n.2. Here, Counts 7 and 9 expressly invoke the Puerto Rico Civil
Code general tort framework. (Docket No. 54 at 32-36). Count 8
ultimately seeks tort-style relief. Id. at 33-34. Count 10 pleads

constitutional claims under Article II's Sections 1, 8, and 16.
Id. at 36-38. None of these claims identify any distinctly tortious
or unconstitutional act, duty, or injury independent of the alleged
harassment, retaliation, and termination Plaintiff challenges
through Title VII and Puerto Rico Laws 69, 17, and 115. Id. at 32-
38. For these reasons, Counts 7-10 are hereby **DISMISSED** as to the
Commonwealth.

## B. Count 3

Count 3 of Plaintiff's *Amended Complaint* brings a supervisory
liability Section 1983 claim against Secretary of Public Safety
Torres-Ríos and Commissioner López-Figueroa. (Docket No. 54 at 23-
27, 38-39).

### a. Applicable law

42 U.S.C. § 1983 ("Section 1983") allows individuals to sue
state and local government officials who deprive them of "any
rights, privileges, or immunities secured by the Constitution and
laws." 42 U.S.C. § 1983. It "is not itself a source of substantive
rights," but merely provides "a method for vindicating federal
rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-
94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3
(1979)).

Section 1983 is meant to provide redress for constitutional
violations by state and local government actors, including in
Puerto Rico. "The traditional definition of acting under color of

state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" West v. Atkins, 487 U.S. 42, 49 (1988) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)); *see also* Billings v. United States, 57 F.3d 797, 801 (9th Cir. 1995) (citing Daly-Murphy v. Winston, 837 F.2d 348, 355 (9th Cir. 1987)) ("§ 1983 provides no cause of action against federal agents acting under color of federal law"). "For purposes of section 1983, Puerto Rico is the functional equivalent of a state," and Puerto Rico officials are treated like state officials. *See* Cruz-Arce v. Mgmt. Admin. Servs. Corp., 19 F.4th 538, 541 n.1 (1st Cir. 2021); 42 U.S.C. § 1983 (creating a cause of action allowing individuals to sue for violations of federal rights "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory").

   i. *Supervisory liability under § 1983*

   Section 1983 liability cannot be based on "a respondeat superior theory -- a 'supervisor's liability must be premised on his [or her] own acts or omissions.'" Justiniano v. Walker, 986 F.3d 11, 20 (1st Cir. 2021) (quoting Guadalupe-Báez v. Pesquera, 819 F.3d 509, 515 (1st Cir. 2016)). A supervisor cannot be held liable under Section 1983 solely because of his position. Guadalupe-Báez, 819 F.3d at 515. "This does not mean, however,

that for section 1983 liability to attach, a supervisor must directly engage in a subordinate's unconstitutional behavior." Id. For a supervisor to be held liable for the actions of a subordinate state or local government official, it is necessary that: "(1) the behavior of such subordinates results in a constitutional violation, and (2) the official's action or inaction was affirmatively linked, to that behavior in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference." Lipsett v. University of Puerto Rico, 864 F.2d 881, 884 (1st Cir. 1988). Deliberate indifference, in turn, requires more than proof of supervisory negligence. *See, e.g.*, Ramírez-Lluveras v. Rivera-Merced, 759 F.3d 10, 19 (1st Cir. 2014). To succeed on a theory of deliberate indifference, the plaintiff must show that: (1) supervisory officials had knowledge of relevant facts; (2) from which they could draw the inference; (3) that a substantial risk of serious harm existed. *See* Guadalupe-Báez, 819 F.3d at 515 (citing id.).

At the Rule 12(b)(6) stage, the First Circuit has cautioned against demanding a level of factual specificity unattainable prior to discovery. Guadalupe-Báez, 819 F.3d at 516 (criticizing the district court for "set[ting] the bar too high" for a supervisory liability claim at the 12(b)(6) stage and for disregarding a supervisor's constructive awareness of past harm).

"A high degree of factual specificity is not required at the pleading stage." Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 56 (1st Cir. 2013).

> ii.  *Fourteenth Amendment Due Process under § 1983*

The Due Process clause of the Fourteenth Amendment "prohibits a state from depriving any person of 'life, liberty, or property, without due process of law,'" and has both a substantive and a procedural component. Gonzalez-Fuentes v. Molina, 607 F.3d 864, 879 (1st Cir. 2010) (quoting U.S Const. amend. XVI, § 1). Fourteenth Amendment property interests "may take many forms," including an interest in employment. Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 576 (1972); *see also* Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985) (regarding government employees' interest in continued public employment). Pursuant to First Circuit precedent and "[u]nder Puerto Rico law, public employees have a property interest in their continued employment, not in the functions they perform." Ruiz-Casillas v. Camacho Morales, 415 F.3d 127, 134 (1st Cir. 2005). "Property interests are creatures of state law, and under the laws of Puerto Rico, public employees who lawfully hold career positions have a protected property interest in continued employment in those positions." Casiano-Montanez v. State Ins. Fund Corp., 707 F.3d 124, 129 (1st Cir. 2013).

Procedural due process claims under § 1983 require courts to determine first if plaintiffs were deprived of a liberty or property interest protected by the United States Constitution and, if so, whether the procedures causing the deprivation "were constitutionally sufficient." Gonzalez-Fuentes, 607 F.3d at 886 (internal citation omitted). One of the lynchpin requirements of procedural due process is adequate notice and that "the affected individual must be forewarned and afforded an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Perrier-Bilbo v. United States, 954 F.3d 413, 433 (1st Cir.), cert. denied, 141 S. Ct. 818 (2020) (quoting González-Droz v. González-Colón, 660 F.3d 1, 13 (1st Cir. 2011)). When evaluating the appropriateness of the procedures employed, courts "balanc[e] a number of factors, including the nature of the private and public interests involved; the risk of erroneous deprivation accruing under the procedures used by the state; and the probable benefit of demanding additional procedural safeguards." Aponte-Rosario v. Acevedo-Vila, 617 F.3d 1, 9 (1st Cir. 2010) (internal quotation omitted).

### b. Plaintiff properly pleads her Section 1983 theory

#### i.   Count 3 contains two distinct Section 1983 theories

As a threshold matter, the Court construes Count 3 of Plaintiff's *Amended Complaint* as containing two Section 1983-based

theories: (a) an Equal Protection theory grounded in Secretary of Public Safety Torres-Ríos and Commissioner López-Figueroa's alleged supervisory liability for Díaz-Muñoz's harassment; and (b) a procedural due process theory premised on the allegation that Secretary of Public Safety Torres-Ríos and Commissioner López-Figueroa terminated Plaintiff's career employment without affording her the opportunity to be heard. *See* (Docket No. 54 at 23-27). Once more, the *Amended Complaint* is not a model of clarity in pleading these claims, as it collapses the two theories into a single count. Id. The bulk of Count 3's allegations focus on Supervisory Defendants' failure to properly supervise Díaz-Muñoz, with just two brief paragraphs asserting deprivation of due process rights. Id. at 26.

The briefing again does not greatly assist the Court in disentangling these theories. The Commonwealth fails to contradict or even address the second theory of Plaintiff's due process right to be heard before the termination of her employment. (Docket No. 56 at 12-17). As a result, the parties' argumentation solely concerns the supervisory liability framework. Id.; (Docket No. 62 at 7-12). Nevertheless, given that two paragraphs of Count 3 explicitly assert that Defendants violated the Due Process Clause by not affording Plaintiff a meaningful opportunity to challenge her dismissal, the Court considers this theory below.

###### i.   The Equal Protection theory is properly pled

Plaintiff's   Equal   Protection   claim   against   Supervisory
Defendants hinges on a number of critical assertions about notice,
sustained   inaction,   and   the   PRPB   leadership's   treatment   of
Plaintiff and Díaz-Muñoz after the latter's alleged harassment of
the former. (Docket No. 54 at 23-27). Most significantly, Plaintiff
alleges that (a) Supervisory Defendants failed to restrain Díaz-
Muñoz's behavior despite three prior sexual harassment allegations
against him from 2015, 2016, and 2017; (b) Commissioner López-
Figueroa waited sixteen months from the time Plaintiff filed her
complaint to fire Díaz-Muñoz from the PRPB, and only did so after
she filed multiple lawsuits and was herself terminated from her
job;  (c)  Supervisory  Defendants  did  not  discipline  or  take
corrective   measures   against   Díaz-Muñoz   despite   this   incident
occurring after a pattern of similar behavior earlier in Díaz-
Muñoz's PRPB career; (d) "[o]ver the years, Commissioner López-
Figueroa protected and shielded" Díaz-Muñoz from discipline; and
(e) the PRPB allowed Díaz-Muñoz to continue carrying his "duty
firearm, taser, pepper spray and baton during the Department of
Justice's   investigation   into   the   alleged   acts   of   criminal
misconduct" and that this further constituted a failure to protect
Plaintiff's physical and mental wellbeing. Id. at 14, 23-27.

At the Rule 12(b)(6) stage, the Court's inquiry is not into
whether Plaintiff will ultimately satisfy the First Circuit's

demanding test for Section 1983 supervisory liability, but rather whether her present allegations "nudge[] [her] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 547; *see also* Morales v. Chadbourne, 793 F.3d 208, 221 (1st Cir. 2015). In conducting that inquiry, the Court does not demand a "high degree of factual specificity...at the pleading stage." Rodríguez-Reyes, 711 F.3d at 56; *see also* Guadalupe-Báez, 819 F.3d at 515.

The Court finds that Plaintiff's allegations clear the plausibility threshold under a theory of deliberate indifference--albeit narrowly. First, as to the averment that Supervisory Defendants failed to take remedial actions to protect women in the PRPB from Díaz-Muñoz, Plaintiff plausibly pleads facts indicating the existence of notice and a pattern of inaction. (Docket No. 54 at 23-27). First Circuit case law on supervisory liability under Section 1983 requires more than proof of supervisory negligence. *See, e.g.*, Ramírez-Lluveras, 759 F.3d at 19. However, the Circuit has also cautioned district courts against demanding a granular level of detail in motions to dismiss as to the mechanics of how supervisors received notice or approached discipline. Guadalupe-Báez, 819 F.3d at 516 (criticizing the district court for "set[ting] the bar too high" for a supervisory liability claim at the 12(b)(6) stage and for disregarding a supervisor's constructive awareness of past harm). Here, Plaintiff does more than simply assert that Supervisory Defendants were above Díaz-

Muñoz in the chain of command. (Docket No. 54 at 23-27). Instead, she pleads that Díaz-Muñoz had a pattern of sexually harassing women at the PRPB, that Supervisory Defendants did not respond to a slew of complaints, and that Commissioner López-Figueroa in particular "protected and shielded" Díaz-Muñoz from discipline during this time. Id. Credited as true and taken together, these allegations support a plausible inference that Supervisory Defendants were aware of the recurring risk posed by Díaz-Muñoz and opted not to take corrective measures.

Second, Plaintiff's allegations concerning a nearly year-and-a-half-long delay before Supervisory Defendants acted against Díaz-Muñoz; Commissioner López-Figueroa's alleged role in shielding Díaz-Muñoz; and the failure to prevent Díaz-Muñoz from carrying around his numerous PRPB-issued weapons during this time support a plausible, pleading stage inference of deliberate indifference. Id. Taken as a part of the pattern alleged by Plaintiff--of prior allegations, supervisors shielding the offender, and then this prolonged delay in justice--Plaintiff's averments as to slow discipline further bolster the plausibility of her claim. Id.

Courts in this district, when faced with similar claims at the 12(b)(6) stage, have typically allowed cases to proceed to discovery in order to further develop the record on plausibly pled sexual harassment claims. See, e.g., Rivera-Freytes v. Puerto

Rico, 894 F. Supp. 2d 159, 162 (D.P.R. 2012) (finding "that the
factual allegations, taken as true and considered together, show
that [supervisory defendant's] inaction is linked to the other
defendants' alleged unconstitutional conduct under a theory of
deliberate indifference" but cautioning that this "does not
necessarily herald a likelihood of success" later on without
factual substantiation) (internal citations omitted); *see also*
Torres Calderon v. Puerto Rico Police Dep't, 2007 WL 2428675, at
*2 (D.P.R. 2007) (finding, in the Fourth Amendment context, that
the complaint alleged facts which Could establish supervisory
liability where supervisors did not properly recruit or train
subordinate police officers).

     To be sure, the *Amended Complaint* is sparse on the details of
Supervisory Defendants' involvement in shielding Díaz-Muñoz from
discipline. Supervisory Defendants may well contest, at summary
judgment or trial, whether the prior incidents were substantiated
by investigation, what each supervisor knew and when, whether there
was cause for the sixteen-month delay in firing Díaz-Muñoz, and
whether the requisite causal nexus exists. *See* Morales, 793 F.3d
at 221; Grajales v. Puerto Rico Ports Authority, 682 F.3d 40, 50
(1st Cir. 2012) ("a favorable plausibility determination does not
necessarily herald a likelihood of success at subsequent stages of
litigation"). However, Plaintiff does plead more than mere
supervisory negligence--she alleges a history of past misconduct,

superiors' involvement in protecting and shielding the offender, and a lengthy delay in disciplinary consequences. Hence, the Court cannot conclude on this record that the supervisory liability theory is implausible. The Guadalupe-Báez court noted that "[i]n our view, there is enough here—though not by much—to permit [plaintiff] to proceed to discovery." 819 F.3d at 517. The same is true here.

Accordingly, this Court holds that Count 3 of the *Amended Complaint* pleads the facts necessary to satisfy the First Circuit's Rule 12(b)(6) standard for supervisory liability under Section 1983. Id. Defendants' *Motion* is **DENIED** as to Plaintiff's Equal Protection theory in Count 3.

### ii.   The procedural due process theory is properly pled

The Court now turns to the two remaining paragraphs in Count 3. Plaintiff accuses Supervisory Defendants of direct involvement in terminating what she avers was a career post:

> 151. Secretary Torres-Ríos and Commissioner López-Figueroa terminated Ms. Lara-Nieves's employment at the PRPB without affording her a meaningful opportunity to challenge her dismissal for a career position.
>
> 152. Secretary Torres-Ríos and Commissioner López-Figueroa violated Ms. Lara-Nieves' due process right to continued employment with the Commonwealth.
>
> (Docket No. 54 at 26).

The *Amended Complaint*'s previous "General Allegations"
section does not shed light on this process. Id. at 6-14.
Paragraphs 79 and 80 are duplicates and both state that "[o]n May
30, 2024, Secretary Torres-Ríos notified Ms. Lara-Nieves that her
employment would be terminated effective June 30, 2024, without
offering any explanation as to the termination." Id. at 14.
Paragraph 81 appears to contain a scrivener's error, stating that
"[o]n June 30, 2024, Secretary Torres-Ríos terminated Ms. Lara-
Nieves' employment at the PRPB, upon recommendation by . [sic]"
before trailing off without identifying the source of the
recommendation. Id. There is no other account of Plaintiff's
attempts to obtain an opportunity to respond before or after her
termination.

The Court is tasked with determining whether Plaintiff has
pled a deprivation of a liberty or property interest protected by
the United States Constitution and, if so, whether the procedures
causing the deprivation "were constitutionally sufficient."
González-Fuentes, 607 F.3d at 886 (internal citation omitted).
Under the Fourteenth Amendment, she has the right to adequate
notice and to the "opportunity to be heard at a meaningful time
and in a meaningful manner." Perrier-Bilbo, 954 F.3d at 433
(internal citation omitted).

As to determining whether Plaintiff has pled a deprivation,
it is settled precedent in the First Circuit that "[p]roperty

interests are creatures of state law, and under the laws of Puerto Rico, public employees who lawfully hold career positions have a protected property interest in continued employment in those positions." Casiano-Montanez, 707 F.3d at 129. Plaintiff expressly alleges that she held a "career" position and that Supervisory Defendants terminated her from that position. (Docket No. 54 at 26). At the Rule 12(b)(6) stage, such pled facts suffice to place a protected property interest at issue.

Plaintiff also pleads facts indicating constitutionally inadequate process. She alleges that Secretary of Public Safety Torres-Ríos notified her on May 30, 2024 that she would be fired in a month, "without offering any explanation as to the termination." (Docket No. 54 at 14). Count 3 then alleges that both Supervisory Defendants were involved in terminating her "without affording her a meaningful opportunity to challenge her dismissal." Id. at 26. Read together, these allegations suggest that Plaintiff received neither notice of the reasons for termination nor any meaningful pre- or post-deprivation opportunity to respond. That is enough to plead a due process deficiency at this stage, because the Fourteenth Amendment requires notice and "an opportunity to be heard at a meaningful time and in a meaningful manner." Perrier-Bilbo, 954 F.3d at 433 (internal citation omitted). Courts in this district have repeatedly allowed procedural due process claims to survive at the

motion to dismiss stage when plaintiffs allege they were fired
from career positions without hearings. *See, e.g.*, Santana v.
Calderon, 188 F. Supp. 2d 160, 177 (D.P.R. 2002) (requiring a pre-
termination hearing before plaintiff could be fired from a
guaranteed position); Pagan Quinones v. Irizarry Mendez, 2011 WL
2712525, at *5 (D.P.R. 2011) (holding plaintiffs plausibly pled
due process violations when they alleged lack of opportunity to
challenge adverse employment actions). The parties' briefing does
not develop the contours of the process allegedly provided (or
not), but the Court's task at the Rule 12(b)(6) stage is only to
determine whether pled facts, accepted as true, state a plausible
claim.

Because Plaintiff alleges she held a career appointment that
was terminated with no meaningful opportunity to challenge the
dismissal, Count 3 states a plausible procedural due process claim.
(Docket No. 54 at 14, 26). Accordingly, Defendants' *Motion* is
**DENIED** as to Plaintiff's procedural due process theory in Count 3.

C. **Injunctive relief pursuant to the PRPB Reform Agreement**

The Commonwealth and Supervisory Defendants argue that
Plaintiff's demands for the enforcement of the PRPB Reform
Agreement must be dismissed because the Reform Agreement is a
consent decree in a separate case subject to ongoing judicial
supervision. (Docket No. 56 at 9-12). They argue that its
enforcement must be sought in that case, not through collateral

litigation. Id. Plaintiff replies that the *Amended Complaint* "is not asking the Court to enforce the Puerto Rico Police Reform agreement" as a consent decree, but rather seeks enforcement of PRPB's own anti-harassment policies, which "happen[] to be required by the Puerto Rico Police Reform Agreement." (Docket No. 62 at 6-7). She points out that the only remedy sought in the *Amended Complaint* related to the PRPB Reform Agreement is in a brief portion of her prayer for relief. Id. at 6. Defendants do not rebut Plaintiff's framing of her prayer for relief.

The *Amended Complaint* nowhere uses the PRPB Reform Agreement as a premise for a freestanding cause of action. *See* (Docket No. 54 at 15-38). A prayer for relief does not constitute a "claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2)-(3). Moreover, Plaintiff's *Response* clarifies that she is **not** seeking to enforce the PRPB Reform Agreement but rather seeks enforcement of PRPB's own anti-harassment policies, which "happen[] to be required by the Puerto Rico Police Reform Agreement." (Docket No. 62 at 6-7). She concedes that the mention of the Reform Agreement is "inconsequential" to her request for an order enforcing the PRPB's own policies regarding sexual harassment. Id. at 7. Defendants do not offer argumentation to contradict Plaintiff's interpretation of her own *Amended Complaint*. Hence, there are no "[c]laims [s]eeking to [e]nforce

the Police Reform Agreement" in the first place. (Docket No. 56 at 9).

The Court concurs with Plaintiff's reading of the words "as required by the Police Reform Agreement" in her prayer for relief as solely providing contextual background. (Docket No. 54 at 38). So, the Court construes her requested injunctive relief accordingly. Id. Plaintiff may not later reframe the injunctive relief request in Paragraph F of her prayer for relief as requesting direct enforcement or supervision of the Reform Agreement in this action. Id. Plaintiff is "bound by [her] statements made in court filings" here, since her admission is "clear" and comes via an "express statement." *See, e.g.*, Akebia Therapeutics, Inc. v. Azar, 976 F.3d 86, 95 (1st Cir. 2020) ("parties may be bound by statements made in court filings"); Harrington v. City of Nashua, 610 F.3d 24, 31 (1st Cir. 2010) ("[o]rdinarily, a pleading admitting a fact alleged in an antecedent pleading is treated as a binding judicial admission, removing the fact from contention for the duration of the litigation); Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co., 976 F.2d 58, 61 (1st Cir. 1992) (binding a party to a "clear and express statement" from its amended complaint).

Accordingly, Defendants' request to dismiss an asserted Reform Agreement "claim" is **DENIED AS MOOT** under Plaintiff's construction.

Civil No. 24-1358 (RAM)                                                    30

## V. CONCLUSION

For the foregoing reasons, Defendants' *Motion to Dismiss* at Docket No. 56 is hereby **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claims in Counts 7-10 as to the Commonwealth are hereby **DISMISSED WITH PREJUDICE**. Defendants' *Motion to Dismiss* is **DENIED** as to the entirety of Count 3 and as to the injunctive relief request for the PRPB to enforce its policies against sexual harassment.

**IT IS SO ORDERED.**

In San Juan Puerto Rico, this 9th day of March 2026.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge