IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| ÁLIDA IROMI LARA-NIEVES<br><br>**Plaintiff,**<br><br>v.<br><br>COMMONWEALTH OF PUERTO RICO ET AL.<br><br>**Defendants.** | **Civil No. 24-1358 (RAM)** |

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge.

Before the Court is Defendant Inspector Luis Díaz-Muñoz ("Díaz-Muñoz" or "Defendant")'s *Motion to Dismiss for Failure to State a Claim and for Joinder* ("*Motion*" or "*Motion to Dismiss*"). (Docket No. 57). For the reasons set forth below, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Defendant's *Motion*.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

On August 12, 2024, Plaintiff Álida Iromi Lara-Nieves ("Plaintiff" or "Lara-Nieves") filed a *Complaint* against the Secretary of Public Safety of Puerto Rico Alexis Torres-Ríos ("Torres-Ríos"), the Commissioner of the Puerto Rico Police Bureau Antonio López-Figueroa ("López-Figueroa") (collectively, the "Supervisory Defendants"), the Commonwealth, and Díaz-Muñoz for alleged employment discrimination and sexual harassment. (Docket No. 1).

On August 13, 2025, Plaintiff filed an *Amended Complaint*. (Docket No. 54). Therein, she states that on September 26, 2023, she was sexually harassed and assaulted by Díaz-Muñoz, the Assistant Director of the Licensing Investigations and Firearm Inspections Bureau of the Puerto Rico Police Bureau ("PRPB"). Id. at 1, 9. Plaintiff alleges that Díaz-Muñoz possessed supervisory authority over her, as she was then an attorney at the Legal Affairs office of the PRPB. Id. Plaintiff claims that PRPB leadership did not adequately protect her from Díaz-Muñoz and likewise failed to timely investigate or discipline Díaz-Muñoz as required by PRPB policy. Id. at 12-13. She avers that she was terminated on June 30, 2024, in retaliation for filing complaints about Díaz-Muñoz's alleged harassment. Id. at 2.

Against this alleged factual backdrop, Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"); Section 1983; P.R. Laws Ann. tit. 29, § 1321 et seq. (1985) ("Law 69"); P.R. Laws Ann. tit. 29, § 155 et seq. (1988) ("Law 17"); Puerto Rico tort statutes; and provisions of the Constitution of the Commonwealth of Puerto Rico, including on a supervisory liability theory against co-defendants Torres-Ríos and López-Figueroa. Id. at 23-27, 38-39. Plaintiff seeks damages, reinstatement, and injunctive relief requiring Defendants to better enforce anti-sexual harassment policies. Id. at 38-39. Against Díaz-Muñoz in particular, she brings counts alleging that

he deprived her Equal Protection rights under Section 1983; that
he violated Puerto Rico Laws 69 and 17 by sexually harassing her;
and that he is liable under Puerto Rico constitutional protections
and the Puerto Rico Civil Code's general tort statute for the same
underlying conduct. Id. at 20-38.

On August 27, 2025, the Commonwealth and Supervisory
Defendants filed a *Motion for Partial Dismissal* of Plaintiff's
*Amended Complaint*; Díaz-Muñoz similarly filed a *Motion to Dismiss*.
(Docket Nos. 56, 57). Before the Court today is Díaz-Muñoz's *Motion
to Dismiss*. (Docket No. 57). He argues for dismissal on a variety
of grounds, including because: (1) the one incident between him
and Plaintiff was "episodic" and allegedly insufficient to create
a hostile work environment; (2) Plaintiff's contemporaneous
complaint paints a less alarming picture of the incident than the
*Amended Complaint*; (3) the *Amended Complaint* allegedly fails to
plead an alteration of the terms and conditions of Plaintiff's
employment; (4) Plaintiff's general tort causes of action are
duplicative of her claims under more specific laws; (5) he is
entitled to qualified immunity; (6) and this Court need not
exercise supplemental jurisdiction over the remaining state law
claims. Id.

On September 30, 2025, Plaintiff filed a *Response* to
Defendant's *Motion to Dismiss*. (Docket No. 65). Therein, she
retorts that the *Amended Complaint* establishes the existence of a

hostile work environment under the applicable case law; that an alternative theory based on quid pro quo independently proves sexual harassment; that Díaz-Muñoz does not have qualified immunity because it is undisputed that sexual harassment violates Section 1983; that Díaz-Muñoz violated Puerto Rico Laws 69 and 17 by sexually harassing Plaintiff as her supervisor; that the general tort claims are not barred; and that the Court should elect to exercise its supplementary jurisdiction. Id. at 3, 10-26. In particular, Plaintiff points out that "courts have recognized that single incidents that are sufficiently severe can constitute a hostile work environment." (Docket No. 65 at 10) (internal citation omitted). She cites a number of circuit and district court cases from around the country in support of this proposition. See id. at 10-18.

On January 29, 2026, Díaz-Muñoz filed a Reply to Plaintiff's Response. (Docket No. 78). Therein, he insists that the Court can consider his Motion to Dismiss without construing it as a "successive" motion. Id. at 3-6. He then distinguishes the cases cited by Plaintiff, arguing that they all involve underlying conduct indicative of "severe conditions, none of which present themselves in the instant case." Id. at 6-9. Díaz-Muñoz avers that he had no authority or involvement in firing Plaintiff, and so claims that Plaintiff's quid pro quo theory of sexual harassment does not pass muster. Id. at 9-12.

On February 13, 2026, Plaintiff filed a *Surreply* in opposition to Defendant's *Reply*. (Docket No. 84). In it, she clarifies that she is not arguing that Díaz-Muñoz's *Motion to Dismiss* is an impermissible successive motion. <u>Id.</u> at 2-3. She rejects Díaz-Muñoz's assertion that the alleged incident does not match the severity of the cited cases, saying that "it is loaded with the long-abandoned notion that sexual battery is not really that abusive or humiliating." <u>Id.</u> at 4. Furthermore, she points to similarities between the incidents underlying the *Amended Complaint* and those condemned in the case law. <u>Id.</u> at 3-5. Plaintiff avers that she brought forth a quid pro quo claim in her *Amended Complaint* and that Díaz-Muñoz's conduct constitutes quid pro quo sexual harassment. <u>Id.</u> at 5-7. Lastly, she argues that some of the matters raised by Díaz-Muñoz are relevant to the summary judgement stage as opposed to the Rule 12(b)(6) stage. <u>Id.</u> at 7-8.

## II.  LEGAL STANDARD

When ruling on a Fed. R. Civ. P. 12(b)(6) motion to dismiss, "[t]he sole inquiry ... is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." <u>Ocasio-Hernandez v. Fortuno-Burset</u>, 640 F.3d 1, 7 (1st Cir. 2011). The Court must first "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or

merely rehash cause-of-action elements." <u>Schatz v. Republican State Leadership Committee</u>, 669 F.3d 50, 55 (1st Cir. 2012) (internal citations omitted). Then, the Court takes "the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor," to determine "if they plausibly narrate a claim for relief." <u>Id.</u> (internal citations omitted). One of the grounds allowing a complaint to be dismissed under Fed. R. Civ. P. 12(b)(6) is for "failure to state a claim upon which relief can be granted." When evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), Courts may consider: "(a) 'implications from documents' attached to or fairly 'incorporated into the complaint,' (b) 'facts' susceptible to 'judicial notice,' and (c) 'concessions' in plaintiff's 'response to the motion to dismiss.'" <u>Schatz</u>, 669 F.3d at 55-56 (quoting <u>Arturet-Vélez v. R.J. Reynolds Tobacco Co.</u>, 429 F.3d 10, 13 n.2 (1st Cir. 2005)).

### III. DISCUSSION

Díaz-Muñoz advances four arguments as to why various portions of Plaintiff's *Amended Complaint* must be dismissed. They are effectively that: (i) Count 2 is not properly pled; (ii) Count 4 is not properly pled; (iii) Counts 9 and 10 are not properly pled; and (iv) Díaz-Muñoz enjoys qualified immunity. *See* (Docket No. 57). The Court addresses each in turn.

## A. **Count 2**

The second count of Plaintiff's *Amended Complaint* pleads under Section 1983 that Díaz-Muñoz violated the Equal Protection Clause by sexually harassing Plaintiff. (Docket No. 54 at 20-23).

### a. **Applicable law**

#### i. Section 1983

42 U.S.C. § 1983 ("Section 1983") allows individuals to sue state and local government officials who deprive them of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. It "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).

Section 1983 is meant to provide redress for constitutional violations by state and local government actors, including in Puerto Rico. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" West v. Atkins, 487 U.S. 42, 49 (1988) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)); *see also* Billings v. United States, 57 F.3d 797, 801 (9th Cir. 1995) (citing Daly-Murphy v. Winston, 837 F.2d 348, 355 (9th Cir. 1987)) ("§ 1983

provides no cause of action against federal agents acting under color of federal law"). "For purposes of section 1983, Puerto Rico is the functional equivalent of a state," and Puerto Rico officials are treated like state officials. *See* <u>Cruz-Arce v. Mgmt. Admin. Servs. Corp.</u>, 19 F.4th 538, 541 n.1 (1st Cir. 2021); 42 U.S.C. § 1983 (creating a cause of action allowing individuals to sue for violations of federal rights "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory").

### ii. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment states that "[n]o State shall deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. It "is essentially a direction that all persons similarly situated should be treated alike." <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985). In the First Circuit, if "a state official *directly* engaged in sexual harassment or sexual discrimination, he would, of course, be subject to section 1983 liability." <u>Lipsett v. Univ. of Puerto Rico</u>, 864 F.2d 881, 901 (1st Cir. 1988) (emphasis in original).

Workplace sexual harassment can be established via a showing of a hostile work environment. <u>Id.</u> at 897. A hostile work environment exists when supervisors or coworkers "create an atmosphere so infused with hostility toward members of one sex

that they alter the conditions of employment for them." Id. (citing

Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986) ("[f]or

sexual harassment to be actionable, it must be sufficiently severe

or pervasive to alter the conditions of [the victim's] employment

and create an abusive working environment") (internal quotation

omitted)). The sexual harassment must be "both objectively and

subjectively offensive, such that a reasonable person would find

it hostile or abusive and [the plaintiff] in fact did perceive it

to be so." Pérez-Cordero v. Wal-Mart P.R., Inc., 656 F.3d 19, 27

(1st Cir. 2011). "[T]he determination of whether such an

environment exists must be made by the trier of fact in light of

the record as a whole and **the totality of circumstances**." Lipsett,

864 F.2d at 901 (internal quotation omitted) (emphasis added). "In

performing this inquiry, a court must mull the totality of the

circumstances, including factors such as the frequency of the

discriminatory conduct; its severity; whether it is physically

threatening or humiliating, or a mere offensive utterance; and

whether it unreasonably interfered with an employee's work

performance." Maldonado-Catala v. Municipality of Naranjito, 876

F.3d 1, 10 (1st Cir. 2017) (citation modified).

A solitary, sufficiently severe instance of sexual harassment

can create a hostile work environment. The Supreme Court has

recognized that an extremely serious incident, even if isolated,

can amount to a discriminatory change in the terms and conditions

of employment. *See* <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998). The First Circuit has recognized that a "single act of harassment may, if egregious enough, suffice to evince a hostile work environment." <u>Gerald v. Univ. of Puerto Rico</u>, 707 F.3d 7, 18 (1st Cir. 2013) (quoting <u>Noviello v. City of Bos.</u>, 398 F.3d 76, 84 (1st Cir. 2005)). First Circuit precedent has further explained that while a single-incident hostile work environment claim could even be based on solely verbal conduct, "successful single-incident claims typically have involved unwanted physical contact." <u>Pomales v. Celulares Telefonica, Inc.</u>, 447 F.3d 79, 84 (1st Cir. 2006) (citing Barbara Lindemann and Paul Grossman, <u>Employment Discrimination Law</u> 795 n. 240 (3d ed. 1996) (collecting cases)).

### b. Plaintiff plausibly pleads the existence of a hostile work environment

Plaintiff's *Amended Complaint* plausibly alleges that Díaz-Muñoz subjected Plaintiff to harassment sufficiently severe that it evinced a hostile work environment. (Docket No. 54 at 20-23).

First, she alleges conduct that goes well beyond the kind of "mere offensive utterance" or workplace incivility that is disregarded by the case law. <u>Faragher</u>, 524 U.S. at 787-788 (recognizing that the standard for "judging hostility" in such claims is demanding to ensure that sexual harassment laws are not transformed into a "general civility code"). Specifically,

Plaintiff avers that her acting supervisor, Díaz-Muñoz, entered the room in which she was standing, grabbed her from behind, held her hands in place to render her immobile, and then forcefully thrust his private parts onto her before rubbing them against her buttocks. (Docket No. 54 at 10). Taken as true, these averments describe severe and intimate contact, physical restraint, and humiliation by a supervisor in front of the subordinate victim's coworkers. Id. The Court rules that this isolated alleged incident is sufficiently severe to alter the terms and conditions of employment and create a hostile working environment. Faragher, 524 U.S. at 787-788 (isolated incidents can suffice as discriminatory changes in the "terms and conditions of employment" if they are sufficiently serious); Pomales, 447 F.3d at 84 (noting that "successful single-incident claims typically have involved unwanted physical contact"); Gerald, 707 F.3d at 18 (a "single act of harassment may, if egregious enough, suffice to evince a hostile work environment"); Noviello, 398 F.3d at 84 (same).

Second, the broader context merits the Court's further attention. Plaintiff avers that Díaz-Muñoz was a high-ranking PRPB officer with supervisory authority over her, since she was the PRPB Legal Affairs Office's liaison to the bureau led by Díaz-Muñoz. (Docket No. 54 at 8-10). Moreover, she maintains that the director of that bureau was not present on the date of the alleged sexual battery, rendering Díaz-Muñoz the officer in command at the

time. Id. at 10. The First Circuit has recently recognized that harassment from a supervisor with authority over the victim has a greater impact and is more concerning in a hostile work environment analysis than harassment from a different coworker. Pike v. Budd, 133 F.4th 74, 90 (1st Cir. 2025). Lastly, Plaintiff pleads facts related to the PRPB's failure to discipline Díaz-Muñoz or to confiscate his "duty firearm, taser, pepper spray and baton during the Department of Justice's investigation into the alleged acts of criminal misconduct perpetrated by him" until the alleged termination of Plaintiff's employment with the PRPB seven months later. (Docket No. 54 at 9, 13, 18). These support Plaintiff's claim that Díaz-Muñoz's rank within the PRPB and the PRPB's alleged failure to meaningfully restrain him magnified the coercive impact of the incident and plausibly contributed to an objectively hostile environment. See Maldonado-Catala, 876 F.3d at 10 (explaining that "a court must mull the totality of the circumstances, including factors such as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance" (citation modified)).

Díaz-Muñoz's principal rebuttal is that cases recognizing single-incident hostile work environments always involve "severe conditions, none of which present themselves in the instant case." (Docket No. 78 at 6-9). This argument is unavailing given the

above-described severity of the sexual battery he is alleged to have committed. Moreover, the case law has, in fact, recognized workplace sexual harassment in cases involving conduct much less severe than presently alleged. *See, e.g.*, Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir. 2000) (suggesting that a reasonable jury could deem a single incident of verbal harassment in front of coworkers as evincing a hostile work environment).

Finally, the issues of what exactly occurred, how forceful the contact was, how humiliating or threatening a reasonable observer would deem it, and how thoroughly it altered Plaintiff's working conditions are all the province of the jury. Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 18 (1st Cir. 2002) (explaining that "it is for the jury to weigh" the alleged harassment's frequency, severity, physically threatening or humiliating nature, and unreasonable interference with work). The Court will not make these fact-intensive determinations at this juncture, since they are reserved for the factfinder at a later stage.

Accordingly, the Court rules that Plaintiff plausibly pled an Equal Protection violation related to a hostile work environment. Hence, the Court need not reach Plaintiff's alternate quid pro quo theory. (Docket No. 65 at 18-21). The Court **DENIES** Díaz-Muñoz's *Motion to Dismiss* as it relates to Count 2.

## B. **Count 4**

The fourth count of Plaintiff's *Amended Complaint* pleads under Puerto Rico Laws 69 and 17 that Díaz-Muñoz sexually harassed Plaintiff. (Docket No. 54 at 27-28).

### a. **Applicable law**

P.R. Laws Ann. tit. 29, § 1321 et seq. (1985) ("Law 69") prohibits employers from "discriminat[ing] against a person...on account of his or her sex." P.R. Laws Ann. tit. 29, § 155 et seq. (1988) ("Law 17") defines sexual harassment in employment as including:

> any type of undesired sexual approach, demand for sexual favors and any other verbal or physical behavior of a sexual nature... [w]hen submission to or rejection of such conduct by the person becomes the grounds for making employment decisions...that affect that person [or] [w]hen the conduct has the effect or purpose of interfering unreasonably with the performance of such person's work or when it creates an intimidating, hostile or offensive work environment.

In the 1990s, courts in this District dealing with Puerto Rico Laws 69 and 17 sometimes held that they did not support a cause of action against individual defendants. Matos Ortiz v. Com. of Puerto Rico, 103 F. Supp. 2d 59, 64 (D.P.R. 2000) (noting that "[c]onsiderable authority construing Law 17 and the closely analogous Law 100 suggests that neither Law 17 nor Law 69 supports a cause of action against individual defendants"); Canabal v.

Aramark Corp., 48 F. Supp. 2d 94, 99 (D.P.R. 1999) ("nothing in Law 17 leads the Court to conclude that sexual harassment was to be singled out as the only form of employment discrimination, including other forms of sex discrimination, for which supervisors or agents could be individually liable") (citation modified); Santiago v. Lloyd, 33 F. Supp. 2d 99, 104-05 (D.P.R. 1998) (holding that Law 17 does not support a cause of action against individuals); Garcia Pantoja v. General Instruments, Inc., 1996 WL 790102, *1 (D.P.R. 1996) (same).

All this changed with the Puerto Rico Supreme Court case of Rosario Toledo v. Distribuidora Kikuet, Inc. ("Kikuet") in 2000. 151 P.R. Dec. 634 (2000). As multiple decisions in this District have since recognized, "the Supreme Court of Puerto Rico held [in that case] that, contrary to the most popular interpretation of Title VII, Puerto Rico's laws against discrimination in the workplace, namely, Laws No. 17, 69 and 100, impose civil liability on the agent, official, administrator or supervisor of an employer in his/her personal capacity for the acts of sexual harassment complained of when he/she is the direct author of the conduct in question." Rivera Maldonado v. Hosp. Alejandro Otero Lopez, 614 F. Supp. 2d 181, 197 (D.P.R. 2009) (citing id.); see also Mercado-Aponte v. Med Health Hospice, Corp., 203 F. Supp. 3d 240, 242 (D.P.R. 2016). In Kikuet, the Puerto Rico Supreme Court reviewed the statutory definition of the word "employer" in Laws 69 and 17.

Mercado-Aponte, 203 F. Supp. 3d at 242. It then framed the question of law before it as "whether the term 'employer' includes its agents, officials, administrators and supervisors...when it is alleged...and subsequently proven, that these incurred in the conduct prohibited." Id. (quoting Kikuet, 151 P.R. Dec. 634). Ruling that Puerto Rico legislators "could not...have had the intention of promoting behavior that is proscribed by the statute by way of granting immunity to the supervisors, officials, administrators and agents of the employer so that they could engage in such behavior with impunity," the Kikuet court concluded that Laws 69 and 17 impose individual liability on any person who commits sexual harassment in the workplace. Id.

### b. Applicable case law forecloses Díaz-Muñoz's request for dismissal of claims under Laws 69 and 17

Under the post-2000 case law in Puerto Rico and this District, Plaintiff may raise a claim for individual liability against Díaz-Muñoz under Puerto Rico Laws 69 and 17. See (Docket No. 54 at 27-28).

Because this Court's jurisdiction over the claims under Laws 69 and 17 is supplemental to its federal question jurisdiction over the Title VII claims, the Court applies Puerto Rico substantive law here. See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938) ("[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the

law of the state"); <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726 (1966) (explaining that federal courts adjudicating supplemental jurisdiction claims are "bound to apply state law to them").

The question, then, is whether Plaintiff may bring a cause of action against Díaz-Muñoz pursuant to Puerto Rico Laws 69 and 17. The answer is yes. In <u>Kikuet</u>, the Puerto Rico Supreme Court held that Laws 69 and 18 impose personal capacity civil liability on the "agent, official, administrator or supervisor of an employer" when he is the "direct author" of the sexual harassment. 151 P.R. Dec. 634 (2000); <i>see also</i> <u>Mercado-Aponte</u>, 203 F. Supp. 3d at 242 (applying the rule in federal court); <u>Rivera Maldonado</u>, 614 F. Supp. 2d at 197 (same). Here, Plaintiff alleges that Díaz-Muñoz personally subjected her to sexual harassment. (Docket No. 54 at 27-28). These allegations position Díaz-Muñoz as the "direct author" of the prohibited conduct. Hence, Plaintiff may pursue a personal capacity civil liability claim against him under <u>Kikuet</u>.

Díaz-Muñoz's argument for the dismissal of Count 4 is largely based on the contrary construction of Laws 69 and 17 that prevailed prior to <u>Kikuet</u>. (Docket No. 57 at 19); <i>see, e.g.</i>, <u>Matos Ortiz</u>, 103 F. Supp. 2d at 64; <u>Canabal</u>, 48 F. Supp. 2d at 99; <u>Santiago</u>, 33 F. Supp. 2d at 104-05; <u>Garcia Pantoja</u>, 1996 WL 790102 at *1. The Puerto Rico Supreme Court rejected this construction more than two decades ago and courts in this District have repeatedly adopted

the modern construction. <u>Kikuet</u>, 151 P.R. Dec. 634 (2000); *see also* <u>Mercado-Aponte</u>, 203 F. Supp. 3d at 242 (applying the <u>Kikuet</u> rule in federal court); <u>Rivera Maldonado</u>, 614 F. Supp. 2d at 197 (same). Accordingly, the Court **DENIES** Díaz-Muñoz's *Motion to Dismiss* as it relates to Count 4.

## C. <u>Counts 9 and 10</u>

Counts 9 and 10 of Plaintiff's *Amended Complaint* bring claims premised on the Puerto Rico Civil Code's general tort statute and Puerto Rico constitutional protections. (Docket No. 54 at 31-38); P.R. Laws Ann. tit. 31, § 10801; *see, e.g.*, <u>Rivera-Lopez v. Clinical Med. Servs., Inc.</u>, 2025 WL 3653805, at *4 (D.P.R. 2025). Díaz-Muñoz argues that these causes of action ought to be dismissed because the underlying conduct of employment discrimination and harassment is concurrently covered by local antidiscrimination statutes. (Docket No. 57 at 20). Plaintiff answers that dismissal of these claims would be improper because "a worker in Puerto Rico may claim additional remedies than those prescribed in specific labor laws if his or her termination has the intent or the effect of frustrating a public policy grounded in a constitutional right." (Docket No. 65 at 24-25) (internal citation omitted).

### a. Applicable law

iii. <u>Articles 1536, 1538, and 1540 of the Civil Code</u>

Article 1536[1] is Puerto Rico's general tort statute, and states that a person who "through fault or negligence, causes damage to another, is obliged to repair it." P.R. Laws Ann. tit. 31, § 10801; *see, e.g.*, <u>Rivera-Lopez</u>, 2025 WL 3653805 at *4. To succeed on an Article 1536 tort claim, the plaintiff must demonstrate "(1) evidence of physical or emotional injury, (2) a negligent or intentional act or omission (the breach of duty element), and (3) a sufficient causal nexus between the injury and defendant's act or omission (in other words, proximate cause)." <u>Gonzalez-Caban v. JR Seafood Inc.</u>, 48 F.4th 10, 14 (1st Cir. 2022) (quoting <u>Vázquez-Filippetti v. Banco Popular de P.R.</u>, 504 F.3d 43, 49 (1st Cir. 2007)).

Article 1538 allows for the imposition of punitive damages "whenever the act or omission constitutes a crime, is committed intentionally or with serious disregard for the life, safety, and property of others." P.R. Laws Ann. tit. 31, § 10801; *see, e.g.*, <u>Rodriguez Perez v. Abreu Garcia</u>, 2024 WL 808654, at *6 (D.P.R. 2024).

This District has repeatedly held that "provisions of the

---

[1] The Puerto Rico Civil Code was amended in 2020; Articles 1536 and 1540 were previously titled Articles 1802 and 1803, respectively. *See* <u>González-Ortíz v. Puerto Rico Aqueduct & Sewer Auth.</u>, 2024 WL 3759659, at *10 (D.P.R. 2024).

Puerto Rico Civil Code are supplementary to special legislation like Title VII, and that a special law prevails over a general law." Orellano-Laureano v. Instituto Medico del Norte, Inc., 2023 WL 4532418, at *6 (D.P.R. 2023) (internal citation omitted); Torres-Figueroa v. Televicentro of Puerto Rico, LLC, 2024 WL 4769756, at *2 (D.P.R. 2024) (explaining that "laws such as Title VII [and local Puerto Rico laws] are special laws" and so supplant Article 1536). Tort claims under Articles 1536 and 1538 are to be dismissed when they are entirely duplicative. See Santana-Colon v. Houghton Mifflin Harcout Pub. Co., 81 F. Supp. 3d 129, 140 (D.P.R. 2014). The Puerto Rico Supreme Court and courts in this District have held that, "to the extent that a specific labor or employment law covers the conduct for which a plaintiff seeks damages, he is barred from using the same conduct to also bring a claim under Article [1536]."[2] Id.

    iv.  Puerto Rico constitutional protections

Puerto Rico's Constitution provides that "[t]he dignity of the human being is inviolable," P.R. Const. art. II, § 1; protects all against "abusive attacks on [their] honor, reputation and private or family life," Id. § 8; and protects workers against "risks to [their] health or person in [their] work or employment," Id. § 16.

---

[2] The Santana-Colon case referred to the former Article 1802. See supra note 1; 81 F. Supp. 3d at 140.

However, this District has repeatedly held that
constitutional claims based on these provisions are not available
in the employment discrimination context when they are duplicative
of specific labor and antidiscrimination statutes. *See, e.g.*,
Galarza-Cruz v. Grupo HIMA San Pablo, Inc., 2018 WL 324863, at *1
n.2 (D.P.R. 2018); Televicentro of Puerto Rico, 2024 WL 4769756 at
*2. When Puerto Rico constitutional claims "are essentially
predicated on allegations covered by specific labor or employment
statutes, plaintiff[s are] barred from using the same conduct to
also bring a claim under other provisions" and constitutional
claims attempting to do so must be dismissed with prejudice.
Galarza-Cruz, 2018 WL 324863 at *1 n.2; Televicentro of Puerto
Rico, 2024 WL 4769756 at *2. This District has in the past
dismissed claims based specifically on Sections 1, 8, and 16 of
the Commonwealth's Constitution because the workplace
discrimination-related conduct alleged was covered by "specific
labor or employment statutes." Galarza-Cruz, 2018 WL 324863 at *1
n.2.

### b. Plaintiff's tort-based and constitutional claims must be dismissed

#### i. Counts 9 and 10 are duplicative of counts brought under special legislation

Plaintiff's infliction of emotional distress cause of action
in Count 9 and constitutional causes of action in Count 10 are

barred as to Díaz-Muñoz. This is so because specific employment statutes cover the conduct upon which these claims rest.

As Plaintiff's own *Amended Complaint* confirms, Counts 9 and 10 seek additional avenues of relief for the same nucleus of facts concerning workplace harassment and her firing that Plaintiff discusses under the special antidiscrimination statutes invoked in her *Amended Complaint*, including Title VII and Puerto Rico Laws 69 and 17. (Docket No. 54). Plaintiff's recital of the actions perpetrated against her under Counts 9 and 10 does not differ from the conduct with which she pleads the antidiscrimination counts based on Title VII and Puerto Rico Laws 69 and 17. Id. at 15-38. Put differently, the "discriminat[ion]" and "attack[]...[on her] honor and reputation...by sexually harassing her" that Plaintiff used to plead Counts 9 and 10 is the very conduct that animates her earlier statutory claims. Id. at 35-38.

That overlap is dispositive; it requires the dismissal of Counts 9 and 10 as to Díaz-Muñoz. This District has repeatedly held that "provisions of the Puerto Rico Civil Code are supplementary to special legislation like Title VII, and that a special law prevails over a general law." Orellano-Laureano, 2023 WL 4532418 at *6 (internal citation omitted); Televicentro of Puerto Rico, 2024 WL 4769756 at *2. Similarly, this District has often ruled that constitutional claims under Article II's Sections 1, 8, and 16 are not available where they simply restate workplace

discrimination and retaliation already governed by specific labor statutes. *See* <u>Galarza-Cruz</u>, 2018 WL 324863 at *1 n.2. Here, Count 9 expressly invokes the Puerto Rico Civil Code general tort framework. (Docket No. 54 at 34-36). Count 10 pleads constitutional claims under Article II's Sections 1, 8, and 16. <u>Id.</u> at 36-38. Neither of these claims identify any distinctly tortious or unconstitutional act, duty, or injury independent of the alleged harassment Plaintiff challenges through Title VII and Puerto Rico Laws 69 and 17. <u>Id.</u> at 34-38. For these reasons, Counts 9 and 10 are hereby **DISMISSED** as to Díaz-Muñoz.

### D. <u>**Qualified immunity**</u>

The last of the defenses Díaz-Muñoz mounts is the "shield" of qualified immunity. *See* (Docket No. 57 at 5, 20-22).

#### a. **Applicable law**

Qualified immunity is a doctrine that protects government officials from civil lawsuits unless they violate a "clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). The doctrine reasons that judges may appropriately examine, at early stages of litigation, whether an official could in fact have been reasonably expected to understand the law at issue or subsequent legal developments that outlawed conduct not previously deemed unlawful. <u>Id.</u> "If the law was clearly established, the immunity defense ordinarily should fail, since a

reasonably competent public official should know the law governing his conduct." Id.

"As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "Qualified immunity balances two important interests--the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009).

Courts usually apply a two-pronged inquiry to a qualified immunity defense, considering: (1) whether the government official violated a statutory or constitutional right, and (2) whether the right was "clearly established" at the time. Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011); see also Glik v. Cunniffe, 655 F.3d 78, 81 (1st Cir. 2011); Pike, 133 F.4th at 91-92. Courts have discretion as to which of the two prongs they tackle first. Pearson, 555 U.S. at 236.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond

debate." <u>Ashcroft</u>, 563 U.S. at 741 (citation modified) (internal citations omitted).

### b. The right was clearly established at the time of the alleged conduct

Díaz-Muñoz's qualified immunity defense fails the second prong of the test, because the unlawfulness of his alleged conduct was clearly established at the time.

Díaz-Muñoz focuses his argumentation as to qualified immunity on Plaintiff's alleged failure to plead a constitutional violation--arguments we have already rejected above. (Docket No. 57 at 22). In the First Circuit, "it is clearly established that a state actor violates the Equal Protection Clause upon creating a hostile work environment." <u>Pike</u>, 133 F.4th at 92. In <u>Pike</u>, the Circuit listed cases demonstrating that sexual harassment violates the Constitution, that "on-the-job sexual harassment is actionable under Section 1983 as a violation of the equal protection clause," and that "if a state official directly engages in sexual harassment or sexual discrimination, he would, of course, be subject to section 1983 liability." <u>Id.</u> (collecting cases) (citations modified).

Here, Díaz-Muñoz cannot plausibly claim that the constitutional right in question was uncertain. Any reasonable police inspector in his position as a supervisor would have known that forcibly grabbing, restraining, and committing sexual battery

against a subordinate would be deemed by the authorities to be unlawful. (Docket No. 54 at 8-10). Like in Pike, "we are convinced by the consensus of binding...authority referenced above that [Díaz-Muñoz] was on notice that his position of authority over [Plaintiff] could further contribute to the coerciveness of his actions, even when the alleged hostile conduct is limited in number." 133 F.4th at 95 (internal citations omitted).

In short, this is not the kind of close call mistake that qualified immunity was designed to forgive. *See* Pearson, 555 U.S. at 231. Taking the allegations as true, Díaz-Muñoz's alleged acts fit squarely within the category of clearly established unlawful conduct. Accordingly, the Court rules that Díaz-Muñoz is not entitled to qualified immunity.

### V. CONCLUSION

For the foregoing reasons, Díaz-Muñoz's *Motion to Dismiss* at Docket No. 57 is hereby **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claims in Counts 9 and 10 as to Díaz-Muñoz are hereby **DISMISSED WITH PREJUDICE**. Díaz-Muñoz's *Motion to Dismiss* is **DENIED** as to all other counts.

**IT IS SO ORDERED.**

In San Juan Puerto Rico, this 9th day of March 2026.

                                    S/ RAÚL M. ARIAS-MARXUACH
                                    United States District Judge